Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 8563 | DATE | 5/20/2004 |
| CASE TITLE | Ryan Campbell vs. Bayou Steel Corporation and Andrew Stuart Clay | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion to remand (Doc. No. 3-1) is granted. As there is no evidence that Defendants submitted interrogatories regarding the amount in controversy to Plaintiff in a timely manner, Plaintiff's motion for attorney's fees in the amount of $4,800.00 (Doc. No. 7-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | 3 number of notices |
| ✓ | Notices mailed by judge's staff. | MAY 21 2004 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | docketing deputy initials |
| ✓ | Mail AO 450 form. | 5/20/2004 date mailed notice |
| | Copy to judge/magistrate judge. | |

| ETV | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 2004 MAY 20 PM 4:08 Date/time received in central Clerk's Office | ETV mailing deputy initials |
|---|---|---|---|

Document Number 13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 2 1 2004

RYAN CAMPBELL,

Plaintiff,

v.

BAYOU STEEL CORPORATION and ANDREW STUART CLAY,

Defendants.

No. 03 C 8563

Judge Rebecca R. Pallmeyer

## MEMORANDUM OPINION AND ORDER

This action arises out of injuries sustained on October 2, 2002 by Plaintiff Ryan Campbell ("Campbell"), a laborer with Kindra Marine Terminal, Inc. ("Kindra"), while he was unloading several pieces of steel owned by Defendant Bayou Steel Corp. ("Bayou") from a barge onto a dock at Bayou's Chicago facility. Defendant Andrew Stuart Clay ("Clay"), the "lead man" for Bayou's night shift operations at the Chicago facility, was the sole Bayou employee present on the night of the accident. Plaintiff filed this action in state court on November 26, 2002, alleging that Defendants negligently failed to properly inspect and warn him about unsafe conditions in the barge. Exactly one year later, on November 26, 2003, Defendants removed the action to the Northern District of Illinois on the basis of diversity pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of Illinois, while Bayou is a Delaware corporation with its principal place of business in Louisiana. Clay is also a citizen of Illinois, but Defendants contend that Clay was fraudulently joined solely for the purpose of defeating federal diversity jurisdiction.

Now before this court is Plaintiff's motion to remand on the grounds that (1) the notice of removal was untimely, (2) Clay waived his right to remove the action by filing a dispositive motion in state court, and (3) this court lacks jurisdiction, as Defendant Clay and Plaintiff are not of diverse citizenship. Plaintiff also seeks attorney's fees for Defendants' alleged improper removal of the action to this court. For the reasons set forth below, Plaintiff's motion to remand the case is

13

granted, and Plaintiff's motion for attorney's fees is granted.

## FACTUAL BACKGROUND

Defendant Bayou manufactures steel, which it ships on barges, trucks, or trains directly to customers or to its various warehouses, including a facility on the Little Calumet River in Chicago. (Clay Dep., Ex. 5 to Remand Motion, at 28-29, 36-37.) When loading steel onto a barge, employees at Bayou's manufacturing facilities in Tennessee and Louisiana stack several bundles of steel side-by-side, separated by dunnage[1]–timber measuring four feet by four feet–which typically extends beyond the ends of the bundles. (*Id.* at 37-39; Bayou's Mem.,[2] at 2-3.) When a barge arrives at the Chicago facility, two Kindra laborers climb down from the dock into the barge and encircle the bundles with a cable attached to a Kindra-owned crane. With the assistance of a signalman, a Kindra crane operator lifts the bundles onto a semi-tractor trailer on the dock. (Clay Dep., at 30, 52-54; Campbell Dep., Ex. 2 to Bayou's Mem, at 32.)

On October 2, 2002, Plaintiff Campbell, who began working for Kindra as a laborer in 1999, was in a barge unloading Bayou steel with a trainee laborer, crane operator Dale Veatch ("Veatch") (who was also a Kindra manager and Plaintiff's direct supervisor), and a signalman. (Campbell Dep., at 31, 35-36.) Plaintiff testified that while he was standing on either a piece of dunnage or a piece of steel supported by dunnage, the dunnage cracked and broke, causing Plaintiff to fall and steel to drop onto his left leg. (*Id.* at 69-73.) As a result of his injuries, Plaintiff's leg was amputated above the knee. (Remand Motion[3] ¶ 1.) Plaintiff is currently receiving workers' compensation from Kindra. (Campbell Dep., at 12.)

Plaintiff filed this action in state court on November 26, 2002 in the Cook County Circuit

---

1 "Dunnage" is defined as "loose materials used to support and protect cargo in a ship's hold." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 359 (10th ed.1997).

2 Bayou's Response to Plaintiff's Motion to Remand

3 Motion to Remand Case to Circuit Court of Cook County

Court's Law Division; Bayou and Clay were served on December 17 and December 19, 2002, respectively. (Bayou's Mem., at 3; Remand Motion ¶ 17.) The complaint states that Plaintiff "suffered severe and permanent injuries, and was forced to, and will continue to seek extensive medical treatment in an attempt to be healed and cured of his maladies," and seeks judgment "in excess of [the state court's] jurisdictional requisite [i.e., $30,000.00][4] that will fairly and adequately compensate him for the losses alleged herein." (Compl., Ex. 1 to Remand Motion, Count I ¶ 12, Count II ¶ 14.) On February 19, 2003, more than 30 days after Defendants were served with the complaint in this matter, this action was placed on the Law Division's bankruptcy stay calendar, (Bayou's Ex. 3, at 1),[5] halting any discovery. (Bayou's Mem., at 3.) As of June 12, 2003, the stay was presumably lifted; on that date, Judge John Ward removed the case from the bankruptcy calendar and granted Defendants leave to answer or otherwise plead by July 14, 2003. (Bayou's Ex. 3, at 2.) Defendants filed separate answers on July 14, 2003. (Bayou's Mem., at 3.) On

---

4 Plaintiff and several courts in this district, *see, e.g., Hanlon v. XY Tool & Die, Inc.*, No. 04 C 410, 2004 WL 838035, at *1 n.1 (N.D. Ill. Apr. 16, 2004); *Conway v. Med. Staffing Network, Inc.*, No. 04 C 1128, 2004 WL 784886, at *1 (N.D. Ill. Apr. 12, 2004); *Ocampo v. Renard Mach. Co.*, No. 02 C 4054, 2002 WL 31526547, at *1 (N.D. Ill. Nov. 13, 2002); *Height v. Southwest Airlines, Inc.*, No. 02 C 2854, 2002 WL 1759800, at *4 (N.D. Ill. July 29, 2002), *del Angel v. Heidelberg Eastern, Inc.*, No. 01 C 8144, 2002 WL 88359, at *1 (N.D. Ill. Jan. 23, 2002), assert that the jurisdictional floor for cases filed in the Law Division is $50,000.00. (Remand Motion ¶ 20.) As the court reads the rules, however, the Law Division in Municipal District One (Chicago) hears civil actions in which the amount in controversy is at least $30,000.00. *See* COOK CO. CIR. CT. GEN. ORDER 1.2.1(a)(1)(i), *available at* http://www.cookcountycourt.org/rules/index.html; *see also* http://www.cookcountyclerkofcourt.org/General_Info/Divisions/Law/law.htm; *cf. Smith v. American General Life & Accident Ins. Co., Inc.*, 337 F.3d 888, 894 (7th Cir. 2003); *Guerrant v. Roth*, 334 Ill.App.3d 259, 262, 777 N.E.2d 499, 502 (1st Dist. 2002).

The court notes that Illinois Supreme Court Rule 222 requires a plaintiff seeking damages of $50,000 or less, exclusive of interest and costs, to attach an affidavit to that effect to the complaint. Although there is no evidence that Plaintiff attached such an affidavit to his complaint, the court will not attempt to divine Plaintiff's intentions regarding a rule he did not cite. In any event, the minimum amount of damages Plaintiff pleads for state law purposes, *see* 735 ILCS 5/2-604, does not affect the court's conclusion that Defendants could have determined from the *injuries* alleged in the complaint, coupled with Clay's own knowledge of the extent of those injuries, that Plaintiff would seek damages in excess of $75,000.

5 The record provides no information concerning Bayou's bankruptcy proceedings.

July 23, 2003, Defendant Clay moved for summary judgment, arguing that at the time of the accident, his duties consisted solely of supervising Bayou employees working inside the Bayou warehouse, he did not have a duty to supervise or direct Kindra employees unloading the barge, and he did not in fact supervise or direct Campbell or any other Kindra employees. (Def. Clay's Motion for Summary Judgment, Ex. 1 to Remand Motion ¶¶ 6-7.)

On a date not specified in the record, Defendants submitted interrogatories, to which Plaintiff responded on August 13, 2003. (Bayou's Resp., at 3.) In response to the question, "Describe in general the injuries you sustained as a result of the occurrence alleged in the complaint," Plaintiff stated that he had "suffered severe injuries to both of his legs[, his] left leg was amputated above the knee[, his] right leg was crushed resulting in his femur being rebuilt with rods and plates, his tibia and fibula being rebuilt with rods, plates, and screws, and his right ankle also being rebuilt." (Bayou's Ex. 4 ¶ 4.) In response to a request for the amounts to date of all medical bills, Plaintiff indicated that he had incurred $58,365.92 in medical expenses through November 21, 2002. (*Id.* ¶ 5.) In response to a request to "[s]tate any and all other expenses and/or losses you claim as a result of said occurrence, including the amount and reasons and/or purpose for each expense and/or loss," Plaintiff stated, "[m]edical expenses expressed in Interrogatory #5 and wage losses." (*Id.* ¶ 7.) In response to the request to "[s]tate the dollar amount of damages you will be seeking at trial," Plaintiff responded, "[a]n amount in excess of the Court's jurisdictional requirement which fairly and reasonably compensates Plaintiff for his injuries." (*Id.* ¶ 21.)

Defendants noticed Plaintiff's deposition for October 10, 2003, but it did not take place until November 11, 2003. (Bayou's Mem., at 3.) At that deposition, Plaintiff testified that he had undergone surgery on the night of his injury and again in June 2003, and that he had been unemployed since the incident, at which time he had been earning approximately $25,000.00 per year. (Campbell Dep., at 12, 83, 100.) On November 26, 2003, 15 days after Plaintiff's deposition and one year after Plaintiff filed his complaint, Defendants removed the action to the United States

District Court for the Northern District of Illinois on the basis of diversity pursuant to 28 U.S.C. §1332, which requires complete diversity and an amount in controversy in excess of $75,000.00, exclusive of interest and costs.

## DISCUSSION

### I. Removal

#### A. Removal Standard

Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . ." 28 U.S.C. § 1441(a). The party seeking to invoke federal diversity jurisdiction bears the burden of demonstrating that the complete diversity and amount in controversy requirements were met at the time of removal. *Chase v. Stop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir.1997). A defendant meets this burden by supporting his allegations of jurisdiction with "competent proof," i.e., "evidence which proves to a reasonable probability that jurisdiction exists." *Id.* (internal quotations marks and citations omitted).

A defendant normally must file a notice of removal within 30 days after service of the complaint. 28 U.S.C. § 1446(b); *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir.1992). If a case is not removable at the outset, a notice of removal may be filed within 30 days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," 28 U.S.C. § 1446(b); *Rothner v. City of Chicago*, 879 F.2d 1402, 1418 (7th Cir. 1989). No case may be removed on the basis of diversity jurisdiction more than one year after commencement of the action, however. 28 U.S.C. § 1446(b); *Rothner*, 879 F.2d at 1418.

In some jurisdictions, plaintiffs are not required to or are actually prohibited from stating the

amount of damages sought. In Illinois state courts, a personal injury plaintiff may not specify exact damages in his complaint beyond the limit set by the local circuit court rule. 735 ILCS 5/2-604; *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993). This district court has addressed this problem in Local Rule 81.2(a), which requires a removing defendant to file with its notice of removal: (1) a statement that the defendant in good faith believes that the amount in controversy exceeds the jurisdictional amount; and (2) a response by the plaintiff to an interrogatory or request for admission stating that the damages sought exceed $75,000.00. *McCoy v. General Motors Corp.*, 226 F. Supp. 2d 939, 941 (N.D. Ill. 2002) (Castillo, J.). The purpose of this rule was to provide "a procedure for defendants faced with a complaint alleging a damages amount that satisfies the Illinois jurisdictional minimum but is below the federal jurisdictional amount in controversy." *Id.* LR 81.2(a) is merely a guide to litigants in this district; it does not override § 1446(b). *Id.*

**B. Timeliness**

The complaint in this case does not contain an express *ad damnun* indicating that Plaintiff is seeking at least $75,000.00. Rather, as noted above, at the end of the complaint, Plaintiff seeks judgment against Defendants "in excess of [the state court's] jurisdictional requisite that will fairly and adequately compensate him for the losses alleged herein." The complaint states that Plaintiff "suffered severe and permanent injuries, and was forced to, and will continue to seek extensive medical treatment in an attempt to be healed and cured of his maladies." (Compl., Count I ¶ 12, Count II ¶ 14.) While Plaintiff acknowledges that the complaint does not explicitly state that he is seeking more than $75,000.00 in damages, he contends that "Defendants surely were on notice that the damages sought . . . exceeded $75,000." (Remand Motion ¶ 22.) Bayou claims that Defendants could not have removed this action within 30 days of receiving Plaintiff's complaint, as Plaintiff's November 11, 2003 deposition constituted the first "paper" indicating that the amount in

controversy exceeded $75,000.00, the jurisdictional minimum amount. (Bayou's Mem., at 3-5.)[6]

As a general rule, LR 81.2(a) indicates that where a complaint does not specify *ad damnum*, the defendant is not on notice that the $75,000.00 jurisdictional minimum amount in controversy is met, and cannot remove the case until it receives an admission that the plaintiff is seeking more than $75,000.00. *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 969 (N.D. Ill. 2003) (Castillo, J.) (citations omitted). Courts in this district have disagreed, however, about whether a defendant must remove a case within 30 days of receiving a complaint that does not specify *ad damnum* but from which the amount in controversy may reasonably be ascertained. *Zeedyk v. Federal Express Corp.*, No. 03 C 9191, 2004 WL 417202, at *2 (N.D. Ill. Mar. 1, 2004) (Gottschall, J.) (collecting cases).

Recently, our Court of Appeals has indicated in *dicta* that where a defendant ascertains that a case meets the $75,000.00 jurisdictional threshold, the plaintiff cannot prevent removal by refusing to concede that fact. *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1020 (7th Cir. 2004). The court explained that "[b]ecause all local rules must be consistent with federal statutes, a rule blocking the defendants from making an independent estimate of the amount in controversy . . . could not be enforced." *Id.* (citing 28 U.S.C. § 2071(a), FED. R. CIV. P. 83(a)(1)). Thus, if a district court were to construe LR 81.2(a) in a way that conditioned removal on plaintiff's acknowledgment that the amount in controversy exceeds $75,000, "that would call its validity into serious question." *Id.*

In *McCoy*, plaintiffs, adults and minors who were injured in an automobile accident, alleged that they suffered "lasting and permanent injuries" and incurred bills related to "medical, surgical, hospital, and nursing care for their injuries" as well as "[lost] wages and profits which they otherwise

---

[6] Defendants note that a majority of federal courts have held that a plaintiff's answers to deposition questions can constitute an "other paper" for purposes of § 1446(b). *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465-66 (6th Cir. 2002) (collecting cases); *but see Mill-Bern Assocs., Inc. v. Dallas Semiconductor Corp.*, 69 F. Supp. 2d 240 (D. Mass. 1999) (rejecting majority view and holding that a deposition is not an "other paper" under § 1446(b)); *Harrell v. Reynolds Metals Co.*, 599 F. Supp. 966 (N.D. Ala. 1985) (same).

would have earned and acquired." 226 F. Supp. 2d at 940-41. Plaintiffs also claimed that they suffered "severe pain, emotional distress, disability, lost value and enjoyment of life, future loss of income, medical expenses, loss of normal life, disfigurement and paralysis." *Id.* Along with its answer, defendant requested an admission from plaintiffs that they were seeking damages in excess of $75,000.00; within 30 days of receiving such admission, defendant filed its notice of removal. *Id.*

Rejecting defendant's argument that its removal was timely because it complied with LR 81.2(a), the court explained that the Local Rule does not excuse a tardy removal where a plaintiff has alleged "serious, permanent injuries and significant medical expenses," as the Rule does not "provide a safe harbor that encourages defendants to wait for discovery responses that simply confirm what was obvious from the face of the complaint." *Id.* at 941-42 (citations omitted). The intent of the 30-day time limit for removal, the court added, is "to resolve the issue of removal as soon as possible and allow the case to proceed without fear of uprooting the proceedings and transplanting them elsewhere." *Id.* at 942-43 (quoting *Huntsman Chem. Corp. v. Whitehorse Tech.*, No. 97 C 3842, 1997 WL 548043, at *5 (N.D. Ill. Sept. 2, 1997) (Coar, J.) (internal quotation marks omitted).

In *Zeedyk*, the court noted that, notwithstanding the *McCoy* decision, the majority of courts in this district "have insisted on strict compliance with LR 81.2 without exception for those cases whose removability might otherwise be determined from a reasonable and commonsense reading of the complaint." 2004 WL 417202, at *2 (internal quotations marks omitted) (collecting cases). The practical effect of this approach, the court noted, is to render all actions filed in Illinois state courts in which the complaint lacks an express *ad damnum* unremovable until proven otherwise. *Id.*

This court respectfully disagrees with this approach, believing as did the *McCoy* court that notwithstanding LR 81.2(a), a defendant who receives a pleading or paper from which the amount

in controversy may reasonably be ascertained must remove the case within 30 days or not at all. Removal statutes are to be strictly construed, and numerous federal courts have concluded that any doubts regarding removability should be resolved against accepting removal jurisdiction. *See* 14B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3721 & n.110 (collecting cases). Resolving all doubts against removal, this court concludes that in circumstances where a defendant can easily ascertain that the amount in controversy exceeds $75,000.00, application of LR 81.2(a) would contravene the purpose of the removal statute's 30-day timing requirement. *See also Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378 (7th Cir.2000) ("Given the severity of [plaintiff's] injuries, nobody is contesting the adequacy of the amount in controversy").

The complaint in this case states that Plaintiff "suffered severe and permanent injuries, and was forced to, and will continue to seek extensive medical treatment in an attempt to be healed and cured of his maladies." (Compl., Ex. 1 to Remand Motion, Count I ¶ 12, Count II ¶ 14.) Clay testified that while he was helping to hoist Plaintiff from the barge following his injury, he could see that Plaintiff's leg was "deformed." (Clay Dep., at 87.) In the court's view, Defendants could have ascertained, both from the face of the complaint and from Clay's own knowledge of Plaintiff's injury, that Plaintiff would incur at least $75,000.00 in medical bills from such "severe and permanent injuries" to his leg. If Defendants entertained genuine doubts concerning the amount in controversy, their doubts should have been dispelled when they received Plaintiff's answers to interrogatories on August 13, 2003. Those answers revealed that Plaintiff had already incurred more than $58,000 in medical bills; that he had been unemployed since the incident and claimed wage losses; and, most significantly, that his left leg had been amputated. *Cf. del Angel v. Heidelberg Eastern, Inc.*, No. 01 C 8144, 2002 WL 88359, at *2 (N.D. Ill. Jan. 23, 2002) (Darrah, J.) (plaintiff who suffered near-amputation of right foot, muscular atrophy, and loss of movement in two toes, had medical bills of $17,000.00 and wage loss of $20,000.00, had stated a claim in excess

of $75,000.00). Yet they made no effort to remove the case even then, instead choosing to wait until Plaintiff gave his deposition several months later.[7]

Plaintiff's motion for remand is granted. As the court concludes that Defendants' removal was untimely, the court need not decide whether Clay waived his right to remove the action by filing a dispositive motion in state court (thereby manifesting an intention to litigate in state court), or whether Clay was fraudulently joined solely for the purpose of defeating federal diversity jurisdiction.[8] The court notes, however, that to the extent Clay is not properly named in this lawsuit, that fact should have been apparent to Defendants at the time it was filed in state court.

## II. Attorney's Fees

Plaintiff also moves this court for an award of attorney's fees resulting from this removal.

---

[7] The court notes, further, at least some question whether Defendants attempted to comply with LR 81.2 by submitting to Plaintiff an interrogatory or request for admission as to the amount in controversy within 30 days of receiving the complaint. While Bayou and Clay were served with the complaint on December 17 and December 19, 2002, respectively, (Bayou's Mem., at 3; Remand Motion ¶ 17), this action was not placed on the bankruptcy stay calendar until February 19, 2003, two months after Defendants received the complaint. (Bayou's Ex. 3, at 1.) Thus, although Bayou asks the court to "consider that the discovery process was slowed considerably by the bankruptcy stay," (Bayou's Mem., at 9), there is no evidence that the stay prevented Defendants from submitting interrogatories or a request to admit to Plaintiff within 30 days of receiving the complaint.

The court notes, further, that had Defendants removed within 30 days, and had the court remanded, Defendants could have removed again once the obstacle to removal had been eliminated. *See Benson v. SI Handling Sys., Inc.*, 188 F.3d 780, 782 (7th Cir. 1999) ("Nothing in § 1446 forecloses multiple petitions for removal"). This court therefore finds no merit to Bayou's claim that Defendants would have "face[d] a risk of possible sanctions" had they removed this case within 30 days of receiving the complaint. (*See* Bayou's Mem., at 8.)

[8] Nor does the court decide whether this case is properly governed by Illinois common law, on which Plaintiff bases his claims, or federal maritime law, as Bayou implicitly argues in opposing Plaintiff's motion to remand, (*see* Bayou's Mem., at 11). *See, e.g., Carrillo v. Indiana Grain Div.*, 149 Ill.App.3d 135, 138, 500 N.E.2d 682, 685 (1st Dist. 1986) (finding federal admiralty law applied where plaintiff was injured while working as a longshoreman on navigable waters); *Wright v. Adonis Compania Naviera, S.A.*, 59 Ill.App.3d 108, 109, 376 N.E.2d 4, 5 (1st Dist. 1978) ("The standard of care which shipowners owe to longshoremen employed by independent stevedores engaged in unloading cargo operations is governed by [federal maritime law]"). In any event, the court notes that Defendants did not raise the issue of federal maritime law either in their removal papers or in state court.

(Fee Petition ¶ 7.) An order remanding a removed case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Although § 1447(c) does not set forth criteria for the exercise of this authority, our Court of Appeals has explained that "the plaintiff must show that the remand order was correct (that is, that removal was improper), but need not show that the removal was in bad faith, and . . . the district court has a broad discretion in deciding whether to award fees." *Sirotzky v. New York Stock Exch.*, 347 F.3d 985, 987 (7th Cir. 2003) (citations omitted). Indeed, "the plaintiff is *presumptively* entitled to an award of fees, as under standard fee-shifting statutes." *Id.* (emphasis original) (citations omitted).

Defendants contend that this court should not award Plaintiff attorney's fees, as the issues addressed in the parties' remand briefs are "intricate and complex." (Defs.' Resp. to Fee Petition[9] ¶ 3.) This case arguably presents a substantial jurisdictional question involving the application of a federal removal statute and a local rule that remains unsettled in the Northern District of Illinois. *See Sirotzky v. New York Stock Exch.*, No. 02 C 0970, 2002 U.S. Dist. LEXIS 14315, at *2 (N.D. Ill. Aug. 5, 2002) (Aspen, J.), *aff'd*, 347 F.3d 985 (7th Cir. 2003) (noting that courts in the Northern District of Illinois have routinely declined to award attorney's fees where the removal raised a "substantial jurisdictional question"). Nevertheless, as noted above, there is no evidence here that Defendants attempted to comply with § 1446(b) and LR 81.2 by submitting to Plaintiff an interrogatory or request for admission as to the amount in controversy within 30 days of receiving the complaint. As Plaintiff is presumptively entitled to an award of fees, and Defendants do not object to any of the claimed amounts of attorney's fees, the court awards Plaintiff the $4,800.00 claimed in his petition. (*See* Fee Petition ¶ 7; Ex. 1 to Fee Petition.)

---

[9] Bayou Steel and Clay's Response to Plaintiff's Petition for Attorney Fees

## CONCLUSION

Defendant Bayou has not met its burden to demonstrate that Defendants' notice of removal was timely. Accordingly, Plaintiff's motion to remand (Doc. No. 3-1) is granted. As there is no evidence that Defendants submitted interrogatories regarding the amount in controversy to Plaintiff in a timely manner, Plaintiff's motion for attorney's fees in the amount of $4,800.00 (Doc. No. 7-1) is granted.

ENTER:

Dated: May 20, 2004

REBECCA R. PALLMEYER
United States District Judge